T.C. Memo. 1998-113


UNITED STATES TAX COURT


ROLF E. POLENTARUTTI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17117-95.                    Filed March 19, 1998.


Rolf Polentarutti, pro se.

<u>James F. Kearney</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioner had a deficiency in income tax for 1989 of $78,123, and was liable for an addition to tax of $3,906 under section 6651(a)(1) for failure to file timely and an accuracy-related penalty of $15,625 under section 6662(a) for negligence.

Respondent determined that petitioner received $258,542 in unreported income in 1989 but now concedes that the amount is $218,542. Petitioner contends that $200,000 of this amount was nontaxable. After concessions, we must decide:

1. Whether $200,000 petitioner received in wire transfers from investors and used for personal purposes in 1989 is taxable as income to him. We hold that it is.

2. Whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file his 1989 income tax return. We hold that he is.

3. Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence. We hold that he is.

Section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

## I. FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

### A. Petitioner

Petitioner lived in Merritt Island, Florida, when he filed his petition in this case.

### B. Petitioner's Business Activities

In 1989, petitioner developed real estate through various entities, including partnerships, corporations, joint ventures, and sole proprietorships. World Golf & Tennis, Ranches of Daytona Beach, and Wildbahn and Clam were three of his projects

in Florida in 1989. Petitioner received, held, and invested money from foreign investors to finance his real estate development activity. Investors wired money to petitioner's bank accounts. He controlled these funds.

At times during 1989, petitioner received money from his foreign investors before he needed it for the real estate developments. On several occasions, petitioner used money from these funds for his personal investments, such as real estate projects other than those in which the foreign investors were participating. For example, petitioner used $40,000 from World Golf & Tennis for a personal investment in a salmon fishery in Iceland around November 1989.[1]

During 1989, petitioner borrowed $40,000 from Gilbert Amman. He repaid those funds in 1989 from the proceeds of the sale of property at 2171 Rockledge Drive (Rockledge Drive property), Rockledge, Florida.[2]

During 1989, petitioner received $934,183 and disbursed $1,245,625 that did not relate to his investor-funded projects. He received no gifts or inheritances in 1989.

---

[1] Petitioner concedes that the source of the funds for his Iceland investment was taxable.

[2] Respondent concedes that petitioner is not taxable on this $40,000.

Petitioner received an extension of time to October 15, 1990, to file his 1989 Federal income tax return.  He filed that return on October 29, 1990.

One of petitioner's European investors was Juerg Aeberhard (Aeberhard).  He lent petitioner $200,000 in 1990.  Petitioner gave Aeberhard a note for $200,000 secured by a mortgage on the Rockledge Drive property.  Petitioner had not repaid any of the $200,000 to Aeberhard at the time of trial.

C.    Respondent's Audit and Determination

Revenue Agent Carmen Elwood (Elwood) audited petitioner's 1989 income tax return.  Elwood examined petitioner's financial records for 1989 and did not find any record that petitioner received a $200,000 loan in 1989.  Petitioner told Elwood that he received a $200,000 loan from Aeberhard in 1989 that was secured by a mortgage on petitioner's home.  Elwood searched the courthouse records but did not find a mortgage recorded on petitioner's home.

On March 1, 1993, Elwood sent a letter written in German to some of petitioner's investors, including Aeberhard, to ask how they paid petitioner for his investment services and whether they had authorized petitioner to use the investment money for personal purposes.  The letter had several grammatical mistakes. Holger Markmann (Markmann), one of petitioner's investors, answered the letter in March 1993.

Petitioner did not keep any records of his real estate development business in 1989. Petitioner reconstructed his income, personal and business expenses, and nontaxable sources of funds from his bank books during respondent's audit.

Elwood used the sources and applications method to reconstruct petitioner's income for 1989. She calculated the following:

| | |
|---|---:|
| Applications (Disbursements) | $1,245,625 |
| Sources | 934,183 |
| Excess disbursements | $311,442 |
| Amount reported | 52,900 |
| Adjustment to income | $258,542 |

## II.  OPINION

A.  Whether Petitioner Is Taxable on $200,000 He Received in Wire Transfers

1.  Whether Aeberhard Lent $200,000 to Petitioner in 1989

Petitioner does not dispute respondent's computations, except he contends that he borrowed $200,000 from Aeberhard late in 1989 and another $200,000 in 1990. Petitioner contends that the 1989 loan was a nontaxable source of funds. Petitioner has the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We have found that Aeberhard lent $200,000 to petitioner in 1990, but petitioner has not proven that Aeberhard lent $200,000 to him late in 1989. There is no evidence that Aeberhard made a wire transfer to him, and there is no debt instrument or other

documentary evidence of a loan from Aeberhard. Petitioner contends that he has no documentary evidence because his European investors did not require more than a handshake for transactions with him. Petitioner's claim is inconsistent with other evidence in the record. Petitioner gave Aeberhard a promissory note for the $200,000 loan in 1990 and secured it with a mortgage. This casts doubt on petitioner's claim that Aeberhard would have required nothing more than a handshake for a loan in 1989. We find that Aeberhard did not lend $200,000 to petitioner in 1989.

2. Whether Petitioner's Investors Authorized Him To Use Their Funds for Personal Purposes

Petitioner's investors made numerous deposits in his accounts in 1989. Petitioner stated that he borrowed surplus money from investors' funds to invest in a "good deal" on several occasions when he was short of cash.

Petitioner contends that his foreign investors knew and did not mind that he used some of their funds to invest for his own purposes. He contends that he could use those funds for personal investments, in part because he was not paid for his work and had overhead costs. However, he concedes that he had no written authority to do so. He contends that he repaid those funds as soon as the project for which they were intended needed them.

We disagree. Markmann stated that petitioner could use "small amounts" to pay for office expenses. We believe that

petitioner's extensive use of funds to make personal investments exceeded his authority.

Petitioner offered into evidence a copy of a fax purportedly from Aeberhard to petitioner dated 3 days before the trial in this case. We did not admit the fax into evidence because it was hearsay, and it was not exchanged at least 15 days before the first day of the trial session as required by our standing pretrial order. Materials not provided in compliance with our standing pretrial order may be excluded from evidence. Rules 104(c)(2), 132(b); Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996).

Even if we had admitted the Aeberhard fax, it would not have convinced us that petitioner had authority to use $200,000 of the investors' funds for personal purposes. The fax states that it responds to Elwood's letter sent about 4 years earlier, and that Aeberhard gave petitioner permission to use his funds. Aeberhard's fax says that petitioner was supposed to pay office expenses and overhead as his contribution to the projects in return for a percentage of the profits. The fax also says that petitioner told Aeberhard that he sometimes took funds from the projects to use for personal purposes, but that most of the time he had other funds available for this, and that Aeberhard did not object if petitioner repaid the funds and the projects did not suffer. The fax does not show that Aeberhard knew and approved of petitioner's use of $200,000 for his own investments.

Petitioner contends that a judge dismissed a civil lawsuit by petitioner's investors against him and contends that this shows that he did nothing wrong. We disagree. The record does not show why the lawsuit against petitioner was dismissed. We draw no inference from his unsubstantiated statement that a suit against him was dismissed.

Petitioner contends that we can reasonably infer from the fact that his investors generally did not respond to Elwood's letter that he had authority to use their funds for personal investments. We disagree. As petitioner noted, the investors may have had several reasons for not answering Elwood's letters, such as they did not want to help petitioner because they were angry that they had lost substantial sums of money, or they did not take the letter seriously because it contained grammatical mistakes. We do not believe that their silence shows that they approved.

Petitioner contends that the fact that he borrowed $200,000 in 1990 to repay money he received in 1989 to invest in World Golf & Tennis but instead used for personal investments shows that the funds he received in 1989 were a loan. Petitioner's argument misses the mark. Even if petitioner used the funds he borrowed in 1990 to replace the $200,000 he used for personal purposes in 1989, he has not shown that those funds were a loan to him in 1989.

3.  Conclusion

During 1989, petitioner received $934,183 and disbursed $1,245,625 that did not relate to his investor-funded projects. Most of the difference is accounted for by the $200,000 of investors' funds that he used for personal purposes.  Petitioner has not shown that he had authority to use the investors' funds for his personal investments or that he received loans that he used for personal purposes.  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955) (taxpayer is taxable on accessions to wealth over which he or she has complete dominion). Petitioner had income in 1989 to the extent that he did not have an additional nontaxable source of funds for that year or that he used investors' funds for personal purposes without authority. Thus, we conclude that petitioner underreported his taxable income by $218,542.

B.  Whether Petitioner is Liable for the Addition to Tax Under Section 6651(a)(1) for Failure To File Timely

Section 6651(a)(1) imposes an addition to tax of up to 25 percent for failure to file timely Federal income tax returns unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect.  United States v. Boyle, 469 U.S. 241, 245 (1985).  To prove "reasonable cause", a taxpayer must show that he exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed

time.  Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner offers no argument that he is not liable for the addition to tax for failure to timely file his 1989 return.  We treat this as a concession by petitioner.  Rothstein v. Commissioner, 90 T.C. 488, 497 (1988); Reaves v. Commissioner, 31 T.C. 690, 722 (1958), affd. 295 F.2d 336 (5th Cir. 1961).  We conclude that petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file his income tax return for 1989.

C.   Whether Petitioner Is Liable for the Accuracy-Related
     Penalty Under Section 6662(a)

Respondent determined that petitioner is liable for the accuracy-related penalty for negligence for 1989 under section 6662(a).

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662 applies.  Sec. 6662(a).  For purposes of section 6662(a), negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c).  The accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part and that the taxpayer acted in good faith.  Sec. 6664(c)(1).

Petitioner made no argument that he is not liable for the accuracy-related penalty. We treat this as a concession by petitioner. Rothstein v. Commissioner, supra; Reaves v. Commissioner, supra. We conclude that petitioner is liable for the accuracy-related penalty for 1989 under section 6662(a) for negligence or intentional disregard of the rules or regulations and that all of the deficiency is due to negligence.

To reflect concessions and the foregoing,

Decision will be entered under Rule 155.